IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 16-cv-879-LTB-CBS

JAMES NGUYEN,

     Plaintiff,

v.

CITY AND COUNTY OF DENVER, COLORADO et al.,

     Defendants.

_____

# MEMORANDUM OPINION AND ORDER
_____

Babcock, J.

     Plaintiff James Nguyen brought this case against the City and County of
Denver, Colorado ("Denver"), alleging employment discrimination under the
Americans with Disabilities Act, 42 U.S.C.A. § 12101 et. seq. (the "ADA") and the
Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq.  Denver moved for summary
judgment, arguing that Officer Nguyen cannot not demonstrate he was qualified to
be a Denver Police Department ("DPD") officer, even with reasonable
accommodation, that Denver reasonably accommodated him, and that he was not
terminated because of his disability.  (ECF No. 37.)  As I describe below, there are
genuine issues of material fact at least as to whether Officer Nguyen, who is
hearing-impaired, was qualified, with accommodation, to be a DPD officer, whether
he adequately requested accommodation, and whether Denver reasonably
accommodated him.  I accordingly DENY Denver's motion for summary judgment.

# I. BACKGROUND

Except where disputes are noted, the record establishes the following facts when viewed in the light most favorable to Officer Nguyen. *See Baca v. Sklar*, 398 F.3d 1210, 1216 (10th Cir. 2005).

Officer Nguyen has had bilateral conductive hearing loss since birth. He worked part-time (between 30-36 hours a week, on average) as a police officer at Lakeside Police Department from June 2010 to April 2013. According to Officer Nguyen, most of his calls and training at the Lakeside Police Department concerned traffic accidents, medical assists, traffic enforcement, and "assist other agencies." (Nguyen Dep. at 69:21-70:11, ECF No. 37-1.) The Lakeside Police Department provided Officer Nguyen with an earpiece that wirelessly connected to his police radio through a FreeLinc transmitter/receiver (like a Bluetooth device). The FreeLinc device dramatically increased his ability to hear radio communications. (D. Montgomery Report at 8-9, ECF No. 51-2.)

Denver knew of Officer Nguyen's impairment when it hired him as a police officer recruit in 2013, in part because he was examined by an audiologist as part of his pre-employment medical examination. (Pre-Employment Medical Agreement and Hearing Evaluation at 1-2, ECF No. 51-21.) Denver's Civil Service Commission was told that Officer Nguyen had a "history of hearing loss and wears hearing aids. He does not meet the Med Tox criteria for hearing without his hearing aids." (*Id.* at 2.) Officer Nguyen also signed a Pre-Employment Medical Agreement that described his "medical condition of bi-lateral hearing loss" and his use of hearing aids. (*Id.* at 3.) Officer Nguyen acknowledged that "the Conditions of Employment

listed herein . . . are being offered me by the Denver Department of Safety as an accommodation for my medical condition of bi-lateral hearing loss. The accommodation is being offered to help ensure that I am able to perform the essential functions" of a DPD officer. (*Id.*) Despite the language referencing "accommodation for my medical condition," the document did not actually include any accommodations for his hearing disability; rather, it listed conditions required to obtain employment. (*Id.* at 4.) One of the conditions required him to wear his hearing aids, and another required him to provide Denver with full access to any medical records related to his hearing. (*Id.*)

From April to October 2013, Officer Nguyen participated in the DPD Academy. Toward the end of the Academy, Officer Nguyen asked a Denver employee about getting a FreeLinc or Bluetooth device that wirelessly connects his hearing aid to the police radio and was told to wait until the field training program, when recruits begin to use the radio. (Nguyen Dep. at 113:1–116:10.) However, when he was issued his radio at the end of the Academy, he was not provided with a FreeLinc or Bluetooth device. (*Id.* at 116:14–19.)

After successfully graduating from the Academy, Officer Nguyen started the four-phase field training program. Throughout the field training program, Officer Nguyen's trainers reported that his hearing impairment negatively impacted his performance:

- On November 29, 2013, Corporal Kevin Ford, Officer Nguyen's phase one field training officer, concluded in his Daily Observation Report (a report created after each day of training) that "Nguyen's hearing is creating a significant risk to the safety of both R/O Nguyen and other officers. R/O

3

Nguyen has a very hard time hearing many sounds that would lead him to a potential suspects or a crime in progress. (11/29/2013 Daily Observation Report, ECF No. 37-6).

- Officer Nguyen's phase two training officer, Corporal Greg Juarez, reported that "his hearing could be a potential officer safety hazard and it could affect his performance in various categories." (12/09/2013 Daily Observation Report at 1, ECF No. 37-12.)

- Corporal Scott Day, Officer Nguyen's phase three training officer, wrote that "Officer Nguyen repeatedly demonstrated that he has difficulty hearing radio transmissions and understanding the information provided by dispatch and other officers." (End of Phase Three Report at 4, ECF No. 37-10). He explained that "Officer Nguyen has a documented hearing disability, and suffers from permanent hearing loss in both ears. Officer Nguyen utilizes hearing aids for this issue, but is still incapable of reliably hearing moderate volume conversation even at normal conversational distances." (*Id.*)

- In his end-of-phase-four report, Corporal Ford reported that Officer Nguyen once let a suspect reach into his coat because he was looking at the suspect's face and trying to communicate with him. (End of Phase Four Report at 5, ECF No. 37-11.) Corporal Ford also reported that Officer Nguyen interviewed a sexual assault victim who was upset, looking down, and crying, but speaking loudly. (*Id.* at 9.) Officer Nguyen asked her to repeat most statements three to four times, telling her to look at him so he could read her lips. (*Id.*) The victim became even more upset, requiring Corporal Ford, who was ten feet from her and had no problem hearing her, to take over the interview. (*Id.* at 9-10.)

- Sergeant Knutson (the field training coordinator at the Academy) concluded that "the root of almost all of Nguyen's significantly poor performance revolves around his hearing loss." (Dec. 18, 2013 Email from Knutson to Archer, ECF No. 51-23.) He explained that "[t]here are some serious officer safety risks that have been documented due to his hearing loss." (*Id.*)

While not as uniform, Officer Nguyen's trainers also reported performance issues that were unrelated to his hearing disability, including issues related to report-writing and orientation while driving. Notably, at the end of phase four, Corporal Ford concluded that Officer Nguyen had significant weaknesses in both

these areas. (End of Phase Four Report at 3-5, ECF No. 37-11.) Corporal Ford also concluded that he had a significant weakness in officer safety—for example, he failed to pat down suspects for weapons on several occasions. (*Id.* at 9.)

During the field training phase, Officer Nguyen repeatedly discussed his hearing issues with his training officers, but Denver did not initiate its formal interactive process, which is designed to identify potential accommodations for disabled employees:

> [T]he purpose of the [formal interactive process] is to explore whether you are able to perform the essential functions of your position; whether you are a qualified individual with a disability within the definitions of the Americans with Disabilities Act of 1980 (ADA), as amended; and, if so, whether any reasonable accommodations are available help you perform the essential functions of your position.

(April 22, 2014 Letter to Officer Nguyen, ECF No. 37-23.) For example, in phase one, Officer Nguyen told Corporal Ford that the FreeLinc device he had used at Lakeside had helped him with using the radio. Corporal Ford did not offer to provide a similar accommodation to Officer Nguyen or take steps to start the formal interactive process, but he did encourage him to bring in an earpiece for his next shift. (Nguyen Dep. at 136:18-139:2, ECF No. 37-1.) Officer Nguyen purchased a device that connected with the radio through a wire, which did not work as well as the FreeLinc device that Lakeside had provided. (*Id.* at 120:11–13, 121:3–122:21, ECF No. 37-1.) Officer Nguyen did not offer any suggestions for further addressing his hearing impairment, but he did ask Corporal Ford if he had any suggestions. Corporal Ford did not have any. (*Id.* at 167:10–21, 170:3–7.) Officer Nguyen later testified he felt that Corporal Ford discriminated against him because of his

disability, was reluctant to train him, and didn't answer his questions. (*Id.* at 160:15–161:5.)

In phase two, Officer Nguyen and Corporal Juarez discussed his hearing aids and his hearing impairment, but once again, Denver did not initiate the formal interactive process. Corporal Juarez asked Officer Nguyen how his hearing aids were working and when he bought them. (12/09/2013 Daily Observation Report at 1, ECF No. 37-12.) Officer Nguyen told him that he bought the hearing aids about six months earlier and that they were "the best fit for [his] ear mold." (Nguyen Dep. at 177:15–28, ECF No. 37-1.) Corporal Juarez said he should speak to a different doctor and "get a second opinion on what hearing device aid he should be using." (*Id.* at 179:6–15.) Officer Nguyen understood that to mean that his hearing was a serious problem. (Nguyen Dep. at 179:19–23, ECF No. 37-1.) At one point, Officer Nguyen commented to Corporal Juarez that, "it feels like you're looking at my disability as a weakness." (*Id.* at 193:11–12.)

On December 14, 2013, Officer Nguyen told Corporal Juarez he had an appointment for a second opinion on January 15, 2014. (*Id.* at 180:24–181:11). He saw his otologist, Dr. Feehs, on January 15, 2014, to discuss possible surgical options because he believed that Corporal Juarez wanted him to explore surgical intervention. (*Id.* at 182:20–183:13.) Dr. Feehs charted that Officer Nguyen "would look into the option of a new hearing aid first and call to schedule [a possible surgery], if desired." (*Id.* at 184:1-10.) Dr. Feehs also referred him to an audiologist in his practice, Ashley Huerta, to discuss new hearing aids. (*Id.* at 185:18–25.)

That same day, Officer Nguyen saw an audiology student extern at Dr. Feehs's office, who charted that she explained to Officer Nguyen that "a higher tech level [would] provide more benefit." (Huerta Dep. at 16:21-22, 19:10–13, ECF No. 51-3.) However, Officer Nguyen's audiologist, Dr. Ashley Huerta, testified that she believed the extern's recommendation was incorrect because, based on the nature of Officer Nguyen's hearing loss, he needed stronger hearing aids, not more advanced technology. (*Id.* at 20:1–13.) The student also charted that Officer Nguyen did not want behind-the-ear style hearing aids because he was in law enforcement. (*Id.* at 19:9–20.) Notably, the higher-tech hearing aids did not need to be behind-the-ear. (*Id.* at 21:14–7.) Officer Nguyen did not see Dr. Huerta during this appointment, but he did schedule an appointment to see her later. (Nguyen Dep. at 188:2–22, ECF No. 37-1.)

After the appointments with Dr. Feehs and the student extern, Officer Nguyen explained to Corporal Day, his phase three training officer, that "surgery was a risk for [him] so [he] didn't think [he] wanted to go through with that." (Nguyen Dep. at 189:12–16, ECF No. 37-1.) He also told Corporal Juarez that he needed to research which hearing aids would be better for him, so he wasn't going to make any immediate modifications. (*Id.* at 189:17–24.)

At the end of the four-phase field training program, Corporal Ford recommended placing Officer Nguyen in a remedial training phase before advancing to policing without a training officer. Officer Nguyen met with Corporal Ford, his FTO training supervisor, Sergeant Heimbigner, and others on February 7, 2014, to

review the remedial training plan. (Nguyen Dep. at 194:5–22, ECF No. 37-1.) The main focus of the meeting was Officer Nguyen's hearing disability, but the remedial training plan focused both on report writing and radio listening and comprehension. (Supervisor's Situation Report, ECF No. 51-4.) Officer Nguyen was informed that even if he successfully completed remedial training, a plan would be developed "to monitor his performance to ensure that his hearing deficiency [was] not impacting his ability to safely complete the job of patrol officer." (*Id.*) The written remedial training plan for Officer Nguyen stated:

> Recruit Officer Nguyen often fails to hear or comprehend radio transmissions. Hearing related concerns remained constant throughout all four phases of training. . . .
>
> Recruit Officer Nguyen's hearing impairment . . . bleeds over into the area of effectively listening and communicating with other officers and citizens. It is important to note the following observations from Corporal Day from Phase Three when evaluating the likelihood of training being able to correct this deficiency. . . . "[T]here are still substantial concerns about Officer Nguyen's hearing disability, which prevents him from reliably hearing spoken voices at normal conversational volumes. . . . It does not appear that any amount of training or instruction is likely to have an impact on the natural medical impairment of Officer Nguyen's hearing."

(2/5/2014 Remedial Training Plan at 1-2, ECF No. 37-15.) The training plan also addressed issues with Officer Nguyen's report-writing, concluding that he "has been unable to demonstrate on a consistent basis that he can identify the proper forms to complete on a call and finish the report in an acceptable amount of time with a reasonable number of errors that do not impact the overall quality of the report." (*Id.* at 1.) The remedial training plan was supposed to last two weeks, from

February 9, 2014, through February 22, 2014, with the option to extend it for another two weeks "if there is a lack of progress." (*Id.* at 1.)

However, after one week of remedial training, Lieutenant Barb Archer told Sergeant Heimbigner to stop the remedial training and circulate a letter recommending Officer Nguyen's termination. On February 17, 2014, Sgt. Heimbigner wrote a memorandum to Chief Robert White recommending Officer Nguyen's termination from the classified service (i.e., from employment as a police officer) for failure to meet his probationary requirements. (2/17/2014 Inter-Department Correspondence, ECF No. 37-17.) The letter incorrectly stated that "[a] second opinion from an audiologist confirmed that Officer Nguyen's hearing aids were the best available for his condition and there were no other aids that could improve his hearing." (*Id.* at 11.) Sergeant Heimbigner concluded:

> This leads me to believe that no amount of training or remedial efforts will bring Officer Nguyen up to an acceptable level of performance. The inability to hear effectively is a contributing factor to the safety of Officer Nguyen, other police officers and the general public. Officer Nguyen's hearing disability has identified a variety of situations that pose risk in many different forms. . . . Placing Officer Nguyen in a solo capacity as a patrol officer would pose an unacceptable and unnecessary risk to the Denver Police Department and the citizens of Denver. There are limited compensating behaviors that can be effectively utilized because without acceptable hearing most forms of communicating frequently used by police officers will always suffer. . . . Continuing Officer Nguyen in the field training and evaluation program would not result in a change in performance since the problem cannot be corrected medically or through training.

(*Id.*) The recommendation also documented Officer Nguyen's other problems throughout training, like report-writing. (*Id.*) Sergeant Heimbigner did not speak with Officer Nguyen regarding the termination recommendation. Officer Nguyen's

District Commander, Commander Nagle, approved the recommendation February 18, as did Lieutenant Archer on February 19. (*Id.* at 12.)

On February 19, 2014, Chief of Police Robert White issued an order prohibiting Officer Nguyen from taking police action and assigning him to his residence during work hours. (11/19/20 Inter-Department Correspondence, ECF No. 37-19). That same day, Officer Nguyen met with Deputy Chief Quinones and other DPD employees. (Nguyen Dep. at 213:8–18., ECF No. 37-1.) During the meeting, Deputy Chief Quinones told Officer Nguyen that at least in part because of his hearing deficiency, he would no longer progress in the training phase. (*Id.* at 203:22–25, 204:13–16; *see also* Quinones Dep. at 51:24–52:1, ECF No. 58-1.) Also in February, Deputy Chief Quinones recommended terminating Officer Nguyen to Manager of Safety Stephanie O'Malley, who had sole authority to terminate Officer Nguyen. Director O'Malley testified that she probably approved the termination in February. (O'Malley Dep. at 7:1-2, 62:5–13, ECF No. 51-15.) She also said that "if somebody's terminated, that means they're terminated." (*Id.* at 68:5–6.)

On February 21, 2014, Chief White issued another order to Officer Nguyen, stating that "until further notice" Officer Nguyen had "no police authority," was on "personal leave . . . under the direction of Safety Human Resources," and was to "begin the interactive process with the city." (11/21/2014 Inter-Department Correspondence, ECF No. 59-1.)

Human resources professional Suzanne Iversen then sent Officer Nguyen a letter describing Denver's interactive process and asking him to submit a

reasonable accommodation questionnaire to his medical provider. (2/24/2014 Letter re: Interactive Process/ADA, ECF No. 37-20.) The questionnaire instructed Officer Nguyen's doctor "to provide information regarding . . . whether [Officer Nguyen] has a physical or mental impairment that substantially limits one or more major life activities, including any functional limitations or major bodily functions with limitations associated with such impairment(s)," as well as "the impact [of Officer Nguyen's] medical condition on his/her ability to work and suggested accommodations that would enable [him] to perform the essential functions of his . . . position." (2/21/2014 Letter to Heath Care Provider at 1, ECF No. 37-22.) Officer Nguyen met with Dr. Feehs on March 27, 2014, and Dr. Feehs completed and signed the questionnaire. (Reasonable Accommodation Questionnaire at 4, ECF No. 37-22.)

On April 2, 2014, Dr. Feehs's office sent the completed questionnaire to Wilma Springer, DPD's ADA coordinator. Despite reporting that Officer Nguyen had "bilateral severe conductive hearing loss," Dr. Feehs also indicated that Officer Nguyen was *not* substantially limited in any major life activity and could work with no restrictions. (Reasonable Accommodation Questionnaire at 1-2, ECF No. 37-22.) However, Dr. Feehs did not realize he was supposed to indicate whether Officer Nguyen's hearing loss was substantially limiting. (Feehs Dep. at 70:13–21, ECF No. 51-10.) Instead, he understood the questionnaire to ask whether Officer Nguyen's hearing loss substantially limited *any other* major bodily functions

because he assumed "we all understood [Officer Nguyen] had hearing loss." (*Id.* at 70:23–25.)

In response to what corrective measures Officer Nguyen was pursuing, Dr. Feehs wrote, "patient is to try new, stronger hearing aids." (Reasonable Accommodation Questionnaire at 2, ECF No. 37–22.) In the accommodation section, Dr. Feehs wrote "Bluetooth technology for connecting with his hearing aids." (*Id.* at 4.)

Officer Nguyen asked Ms. Springer a few questions about Dr. Freeh's responses to the questionnaire. He asked, "if the doctor recommended stronger hearing aids and/or Bluetooth device or something that helped [him] out in the past, what would happen next?" (Nguyen Dep. at 232:2–9, ECF No 37-1.) Ms. Springer responded that Denver would put him "back into work" if that was the case. (*Id.* at 232:20–21.)

Officer Nguyen saw Dr. Huerta on April 2, 2014, for a hearing aid evaluation. He ordered new, stronger hearing aids. (Huerta Dep. at 32:8–14, ECF No. 51-3.) The new hearing aids were the "behind the ear" style Officer Nguyen had not wanted before because he feared it would impair his ability to act as a police officer. (*Id.* at 27:7–15; 31:18–32 :15, ECF No. 37-13; Nguyen Dep. at 262:6–264:15, ECF No. 37-41.) Dr. Huerta testified that with his new hearing aids, "the odds are in . . . favor that he would have close to normal hearing." (Huerta Dep. at 91:3–11, ECF No. 51-3.) She could not say exactly how much improvement Officer Nguyen received from his new aid compared to his old one and she could not "quantify . . .

how much [his hearing] improved," but she could presume his hearing was better because "based on hearing aid capabilities . . . he had access to more sound." (*Id.* at 93:7–10, 70:7–21.)

On April 22, 2014, Ms. Springer sent Officer Nguyen a letter ending the interactive process, and Officer Nguyen was terminated the next day for failing to perform the essential duties of a police officer. (4/23/2014 Letter, ECF No. 37-25.) The parties dispute why the interactive process ended. Denver contends the process was terminated because Dr. Freeh indicated Officer Nguyen was not substantially limited in any major life activity and could work with no restrictions. (Mot. Summary Judgm't at 11, ECF No. 37.) To support its position, Denver points to Ms. Springer's letter ending the interactive process, which explained that "[s]ince your physician did not impose any restrictions on your ability to work, I am ending the interactive process." (*See* 2/2/2014 Letter re: IAP Conclusion Letter, ECF No. 37-23.)

Officer Nguyen contends the interactive process really ended after Officer Nguyen's supervisors and the Safety Human Resources Department decided that Officer Nguyen was not returning to work as a police officer, regardless of Dr. Feehs's responses. (Response at 15, ECF No. 50.) In support of his position, Officer Nguyen points to several emails from various Denver employees. For instance, on April 4, 2014, Ms. Springer emailed Ms. Iversen and told her she had received Dr. Freeh's questionnaire, and Dr. Freeh said that Officer Nyguen could return to work without restrictions. (April 2014 Email String at 2, ECF No. 51-12.) She wrote that

Dr. Freeh was "recommending [Officer Nguyen] try new stronger hearing aids, [and] blue tooth technology connecting to his hearing aids." (*Id.* at 3.) Ms. Springer also wrote that Officer Nguyen was "in the process [of] scheduling his appointment for the ear mold and ordering the hearing aids. . . . With the purchase he will have a 45-day trial. I recommend he is assessed during this time to ensure he can perform the essential functions of his job, Police Officer." (*Id.*) Ms. Springer wrote at the bottom of the email: "NOTE: [Officer Nguyen] asked if he could be placed in a different district, because he felt that his training Corporal, Kevin Ford, will discriminate knowing his disability. He wants the best out of his training, and does not feel he will get that from Kevin." (*Id.*)

Ms. Iversen forwarded Ms. Springer's email to Deputy Chief Quinones and Deputy Chief Mary Beth Klee, adding, "I recommend a conversation/meeting occur with [Ms. Springer] directly so she has a better understanding the hearing issue is more complicated than what is being presented by [Officer Nguyen]." (*Id.* at 2.) Deputy Chief Quinones responded, "Did she [Ms. Springer] read any of the packet? Set up the meeting, but she needs to be up to speed on the issues in the packet and not be relying solely on his side of the story. Amazing!!" (*Id.*) Deputy Chief Klee responded, "do we need to make it clear to Officer Nguyen that we are not telling him to move forward with those expensive hearing aids? It sounds like [Ms. Springer] indicated to him that he could return to work if he got them [and] that concerns me." (*Id.* at 1.) Ms. Klee testified the decision to terminate Officer Nguyen as a police officer had already been made by the time she wrote that email, but they

engaged in the interactive process "because Suzanne Iverson in HR said that we needed to." (Klee Dep. at 40:18–24, 45:3–25, ECF No. 51-14.)

When Ms. Iversen forwarded Deputy Chief Quinones's and Deputy Chief Klee's responses to Ms. Springer's original email back to Ms. Springer, she explained that Deputy Chief Quinones "stated clearly to me they <u>will not allow</u> [Officer Nguyen] to return to the position of a Police Officer based on the [sic] all the data in the binder documenting significant performance concerns. They want to ensure you understand the magnitude of the performance failures/gaps." (April 2014 Email String at 1, ECF No. 51-12.)

No one who received the forwarded email from Ms. Iversen responded to Officer Nguyen's allegation of discrimination or reported it to the Executive Director for the Department of Safety, Stephanie O'Malley. Deputy Chief Klee testified that she didn't think the discrimination allegation needed to be investigated because Officer Nguyen was not going back into field training with Corporal Ford. (Klee Dep. at 30:5–16, 31:13–16.) Similarly, Deputy Chief Quinones testified that he had no obligation to investigate Officer Nguyen's discrimination claim since he had "already made the decision that he was not going to advance." (Quinones Dep. at 92:23–93:2.) Deputy Chief Quinones also testified that "I don't believe that [Corporal] Ford . . . discriminated against him." (*Id.* at 97:18–19.)

After the interactive process ended and Denver terminated Officer Nguyen, he returned to the Lakeside Police Department as a police officer. His supervising officers report that he does well at his job, aided by the FreeLinc device he uses with

his police radio and the new hearing aids he ordered during the interactive process with Denver. (Harris Dec. ¶ 8, ECF No. 51-27) ("We made reasonable accommodations for Officer Nguyen's hearing disability, and it was not a problem. All things considered, Officer Nguyen did as well, if not better, with the radio than other officers."); (Hughes Dec. ¶ 8, ECF No. 51-20) ("I thought Officer Nguyen was a great police officer."). According to his audiologist, the new hearing aids "definitely improved [Officer Nguyen's] ability to hear." (Huerta Dep. at 86:24–87:2.) Officer Nguyen's expert witness, Dan Montgomery, a retired police chief, went on a "ride-along" with Officer Nguyen while he was working at Lakeside. Mr. Montgomery "did not notice any problems whatsoever with [Officer Nguyen's] communication skills in terms of hearing, listening, and conversing." (Montgomery Report at 9-10, ECF No. 51-2.) Mr. Montgomery "would talk in very soft tones, sometimes looking out of the right side window while [he] was talking, and Officer Nguyen was able to hear [him], understand what [he] was saying, and was able to converse." (*Id.* at 10.)

In August 2014, Officer Nguyen filed a charge of discrimination with the Equal Employment Opportunity Commission. The EEOC determined that there was reasonable cause to believe that Denver violated the ADA, but efforts at conciliation were unsuccessful. On January 20, 2016, the Department of Justice issued a Notice of Right to Sue to Officer Nguyen, and Officer Nguyen timely filed this action on April 19, 2016. (Compl., ECF No. 1.)

## II. SUMMARY JUDGMENT STANDARD

In deciding this summary judgment motion, I view the facts in the light most favorable to the non-moving party, Officer Nguyen, and draw all reasonable

inferences in his favor. *Allen v. Muskogee, Okl.*, 119 F.3d 837, 839–40 (10th Cir. 1997). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In this inquiry, "[t]he nonmovant is given wide berth to prove a factual controversy exists." *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1182 (10th Cir. 2003) (quotation omitted). However, to defeat a motion for summary judgment, the evidence must be based on more than conjecture, speculation, or surmise. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

## III. ANALYSIS

The ADA prohibits employers from discriminating against "a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). A prima facie case of disability discrimination under the ADA requires that an employee (1) is a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) suffered discrimination by an employer or prospective employer because of that disability. *See EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1037–38 (10th Cir. 2011).

The Rehabilitation Act generally imposes the same obligations on employers that the ADA does, and the language of disability it uses mirrors that of the ADA. *Cummings v. Norton*, 393 F.3d 1186, 1190 n.2 (10th Cir. 2005). Thus, while my analysis below generally refers to the ADA, it also applies to Officer Nguyen's claim under the Rehabilitation Act. *Wilkerson v. Shinseki*, 606 F.3d 1256, 1262 (10th Cir.

2010) ("We apply the standards from the American with Disabilities Act in analyzing a Rehabilitation Act claim.").

Different claims under the ADA require different types of evidence. *See Punt v. Kelly Servs.*, 862 F.3d 1040, 1047–48 (10th Cir. 2017). Here, Officer Nguyen appears to allege two distinct claims under the ADA: a failure-to-accommodate claim and a wrongful termination claim. The two claims require different types of evidence and follow different legal frameworks. I evaluate each claim in turn.

## A. Failure-to-Accommodate Claim

The Tenth Circuit has established a modified burden-shifting framework to assess failure-to-accommodate claims. Under this modified framework, the employee must make an initial showing that "(1) she is disabled; (2) she is 'otherwise qualified'; and (3) she requested a plausibly reasonable accommodation." *Punt*, 862 F.3d at 1050 (quoting *Sanchez v. Vilsack*, 695 F.3d 1174, 1177 (10th Cir. 2012)). As this modified framework reflects, an employer's failure to provide reasonable accommodation is itself evidence of discrimination, so an employee must only show that the employer refused to provide reasonable accommodation to make out a prima facie case. *See id.* at 1048 ("[T]he only reason an accommodation is required is because of the disability, and thus the failure to provide a reasonable accommodation to a qualified employee with a disability is inherently 'on the basis of [the] disability,' 42 U.S.C. § 12112(a), regardless of the employer's motivation.").

Once an employee makes out a prima facie case, the burden of production shifts to the employer to present evidence either "(1) conclusively rebutting one or more elements of plaintiff's prima facie case or (2) establishing an affirmative

defense, such as undue hardship or one of the other affirmative defenses available to the employer." *Id.* at 1050 (quoting *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1177 (10th Cir. 1999) (en banc)). "If the employer does either of the above, summary judgment will be appropriate for the employer unless the employee then presents evidence establishing a genuine dispute regarding the affirmative defenses and/or rehabilitates any challenged elements of [his] prima fac[ie] case sufficiently to establish at least a genuine dispute of material fact as to such challenged elements." *Id.* (quotation and alteration omitted).

Establishing a prima facie case is "not onerous," *Hawkins v. Schwan's Home Serv., Inc.*, 778 F.3d 877, 883 (10th Cir. 2015) (quotation omitted), *cert. denied*, 136 S. Ct. 690 (2015), and "[s]ummary adjudication may be improper when the employee has presented evidence [he] could perform the essential functions of [his] position" with the aid of an accommodation, *Mason v. Avaya Commc'ns, Inc.*, 357 F.3d 1114, 1124 (10th Cir. 2004).

As I describe below, Officer Nguyen has made out a prima facie failure-to-accommodate case, and Denver has not conclusively rebutted any elements of the case, nor does it assert any affirmative defense, making summary judgment on this claim inappropriate.

### 1.    Disability

The ADA's definition of "disability" includes "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Hearing is a major life activity. 42 U.S.C. § 12102(2)(A).

Officer Nguyen is plainly disabled under the ADA. Without hearing aids, his ability to hear is impaired, an undisputed fact apparent from Denver's records and the medical evidence in the record. Even before he was hired, Officer Nguyen's pre-employment hearing evaluation reflected his disability. (Pre-Employment Medical Agreement and Hearing Evaluation, at 1–2, ECF No. 51-21.) Similarly, his Pre-Employment Medical Agreement described his "medical condition of bi-lateral hearing loss" and his use of hearing aids. (*Id.* at 3.)

While Denver inexplicably (and unsuccessfully) argued before the EEOC that Officer Nguyen was not disabled, it has rightly abandoned that argument before this Court. (*See* Position Statement at 5-6, ECF No. 51-29.) Despite abandoning its argument that Officer Nguyen is not disabled, it nevertheless persists in placing unwarranted emphasis on Dr. Freeh's mistaken response to its reasonable accommodation questionnaire. According to Denver, it was "entitled to rely on Dr. Feehs'[s] assertion that Plaintiff was not disabled." (Mot. Summary J. at 16, ECF No. 37.) But Dr. Feehs also listed accommodations Officer Nguyen needed for his hearing disability and reported that he had "bilateral severe conductive hearing loss," vitiating Denver's reliance argument. (Reasonable Accommodation Questionnaire at 1–2, 4, ECF No. 37–22.)

Officer Nguyen is disabled, and Denver does not argue otherwise. Rather, it essentially argues that despite Officer Nguyen's disability, it should be relieved from its obligations under the ADA based on Dr. Feehs's mistaken response to its questionnaire. I reject this argument in its entirety. Officer Nguyen is plainly

disabled under the ADA, and Denver cannot avoid that fact by pointing to Dr. Feehs's responses.

## 2. Qualification

Having determined that Officer Nguyen is disabled, I must now determine whether he was qualified to be a Denver police officer. Under the Code of Federal Regulations, a qualified person with a disability is someone who "satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires and, with or without reasonable accommodation, can perform the essential functions of such position." 29 C.F.R. § 1630.2(m); *accord* 42 U.S.C. § 12111(8) ("The term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."). Courts use a two-step inquiry to determine whether a plaintiff is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired:

> First, the court determines whether the individual can perform the essential functions of the job. Second, if (but only if) the court concludes that the individual is unable to perform the essential functions of the job, the court determines whether any reasonable accommodation by the employer would enable him to perform those functions.

*Davidson*, 337 F.3d at 1190 (citation omitted). Before "an individual can be deemed not 'otherwise qualified[,]' the employer must make an effort to accommodate the employee's disability." *Wilkerson*, 606 F.3d at 1265. The plaintiff bears the burden

of showing his qualification for a job.  *Hennagir v. Utah Dep't of Corrections*, 587

F.3d 1255, 1262 (10th Cir. 2009).

The parties both agree that Officer Nguyen could not perform the essential

functions of the job without accommodation.  But they disagree as to the

appropriate scope of the inquiry into the qualification question, what those essential

functions are, and whether Officer Nguyen could perform them even with

accommodation.  I address these issues in turn.

### a.    Scope of Inquiry

Contrary to Denver's arguments, the qualification question centers on

whether a plaintiff's *disability*, with or without a reasonable accommodation,

prevents him from performing the essential functions of a position.  Thus, Denver's

arguments about Officer Nguyen's performance issues unrelated to his hearing

disability (e.g., report writing and determining the best route to a scene) are

irrelevant to whether Officer Nguyen can establish a prima facie failure-to-

accommodate case.  *E.g., Angell v. Fairmount Fire Protection District.*, 907 F. Supp.

2d 1242, 1251 (D. Colo. 2012) (holding that employer's allegation of performance

failures unrelated to employee's disability "is entirely irrelevant to the issue of

whether Plaintiff was qualified to perform the essential functions of his job");

*Aquart v. Ascension Health Info. Servs.*, No. A-09-CA-804-AWA, 2011 WL 233587,

at *9 (W.D. Tex. Jan. 24, 2011) ("Generally, the question centers on whether the

plaintiff's *disability*, with or without a reasonable accommodation, prevents her

from performing the essential functions of a position."); *Carter v. Potter*, No. Civ.A.

02-7326, 2004 WL 2958428, at *9 (E.D. Pa. Dec. 21, 2004) ("The parties' dispute

over whether plaintiff adequately performed his mail casing tasks is not a dispute over plaintiff's objective qualifications for the job, but rather one over adequacy of performance."); *see also* 2 Employee and Union Member Guide to Labor Law § 7:69 ("[U]nless caused by a disability, performance or misconduct problems are not part of the 'qualified' element . . . .").

Thus, I have previously rejected arguments that, like Denver's, conflate the qualification question with performance issues unrelated to a plaintiff's disability. *Jacobsen v. Dillon Companies, Inc.*, No. 10-cv-01944-LTB-BNB, 2012 WL 638122, at *4 (D. Colo. Feb. 28, 2012) (rejecting argument that plaintiff was not qualified because she could not meet productivity requirement for position and explaining that defendants had conflated whether plaintiff was qualified with whether she was performing her job well). Because the failure to accommodate is *itself* discrimination, the fact that Officer Nguyen may have had performance issues unrelated to his disability cannot defeat this claim. *Punt*, 862 F.3d at 1048 (explaining that in a failure-to-accommodate claim, the nexus between the disability and the adverse employment action is proven by "the failure to provide a reasonable accommodation to a qualified employee"); *see also Smith*, 180 F.3d at 1178 n.12 (explaining that "[i]n [a failure-to-accommodate] case, the Congress has already determined that a failure to offer a reasonable accommodation to an otherwise qualified disabled employee *is* unlawful discrimination," so we do not need "to probe the subjective intent of the employer").

That is not to say, however, that Denver's arguments regarding Officer Nguyen's other performance issues do not bear on my analysis at all. Rather, Denver's arguments on this point may bear on whether it can rebut one or more of the elements of Officer Nguyen's prima facie case or establish an affirmative defense. *See Punt*, 862 F.3d at 1050. Where applicable, I address those arguments below.

### b. Essential Functions

Denver argues that Officer Nguyen could not perform numerous essential functions because of his hearing disability. Officer Nguyen responds that with the right hearing aids and a FreeLinc device, he can perform the essential functions of a DPD officer.

The plaintiff bears the burden of showing he can perform the essential functions of the job. *Hawkins*, 778 F.3d at 889. "Essential functions" are "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1). Factors to consider include:

(i) The employer's judgment as to which functions are essential;

(ii) Written job descriptions prepared before advertising or interviewing applicants for the job;

(iii) The amount of time spent on the job performing the function;

(iv) The consequences of not requiring the incumbent to perform the function;

(v) The terms of a collective bargaining agreement;

(vi) The work experience of past incumbents in the job; and/or

(vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3). The essential function analysis should not "second guess the employer or . . . require [it] to lower company standards. Provided that any necessary job specification is job-related, uniformly enforced, and consistent with business necessity, the employer has a right to establish what a job is and what is required to perform it." *Hennagir*, 587 F.3d at 1262 (quotation and alternation omitted); *see also Davidson*, 337 F.3d at 1191 (stating that evidence of what an employer thinks is an essential job function is important, but not conclusive).

I have little trouble accepting Denver's arguments that the essential job functions of a Denver police officer include "consistently hearing the radio especially with background noise; communicating with suspects while searching them for weapons and other contraband; communicating with suspects in the dark (because he could not read lips in the dark); and communicating with colleagues at reasonable volume levels or whispers." (Mot. Summary J. at 13, ECF No. 37.) Officer Nguyen does not meaningfully contest that these are essential duties; rather, he insists that, with the proper accommodation, he can perform them. He also argues that there are disputed material facts on this point. I therefore turn to those issues.

### 3. Reasonable Accommodation

#### a. Request for Reasonable Accommodation

Denver argues that Officer Nguyen never requested an accommodation, and it therefore had no duty to accommodate him. Officer Nguyen responds that because Denver knew he was disabled and needed accommodation, Denver had a

duty to provide reasonable accommodation even absent any request. Alternatively, Officer Nguyen argues he repeatedly requested accommodation.

The Tenth Circuit's case law on whether an employer has a duty to accommodate absent a request is not entirely cohesive, at least where, as here, the employer knows of the employee's disability. On the one hand, an unpublished case recently held that a request is required, even when the employer knows the employee is disabled. *Dinse v. Carlisle Foodservice Prod. Inc.*, 541 F. App'x 885, 890 (10th Cir. 2013) (unpublished) (holding that even where there was "no doubt" employer knew of disability, employee had to request accommodation). In a published case from 2011, the Tenth Circuit held that an HIV-positive employee had not made an adequate request for accommodation, even though the employer knew of his HIV status, where he requested time off but did not tell his employer the request was related to his HIV status. *C.R. England*, 644 F.3d at 1048–50. And in *Punt*, decided earlier this year, the Tenth Circuit explained that a request for a plausibly reasonable accommodation was part of a plaintiff's prima facie case in a failure-to-accommodate claim, although it did not address whether this requirement applied in cases where the defendant already knows about the plaintiff's disability and need for accommodation. *Punt*, 862 F.3d at 1050.

On the other hand, in *Robertson v. Las Animas County Sheriff's Dep't*, the Tenth Circuit explained that an accommodation request is only required if a person's disability is not obvious. 500 F.3d 1185, 1196 (10th Cir. 2007) ("[W]hen an individual's disability is not obvious, the individual must inform its employer of the

disability before the employer can be held liable under the ADA for failing to provide a reasonable accommodation.").  Some secondary sources appear to endorse this view by recognizing that an employer can trigger the interactive process if it recognizes the employee needs an accommodation.  1 Emp. Discrim. Coord. Analysis of Federal Law § 6:69 ("The interactive process is triggered by a request for accommodation or an employer's recognition of the need for accommodation.").

I need not resolve this potentially conflicting authority because a reasonable jury could find that Officer Nguyen made several adequate requests, putting Denver on notice that he was disabled and needed accommodation.  The notice or request "does not have to be in writing, be made by the employee, or formally invoke the magic words 'reasonable accommodation,'" but it "nonetheless must make clear that the employee wants assistance for his or her disability."  *C.R. England*, 644 F.3d at 1049 (quotation and emphasis omitted).  Thus, "the employer must know of both the disability and the employee's desire for accommodations for that disability."  *Id.* (quotation omitted).

First, a reasonable jury could conclude Officer Nguyen made an adequate request for accommodation when he asked a Denver employee if he could use a FreeLinc device with the police radio.  Denver argues that because this request came before Officer Nguyen actually needed to use the radio, it was "premature" and thus "unreasonable."  (Reply at 20–21, ECF No. 62.)  But a request for accommodation is meant to *trigger* the interactive process, not conclude it. *Woodman v. Runyon*, 132 F.3d 1330, 1345 (10th Cir. 1997) (The "employee's initial

request for an accommodation triggers the employer's obligation to participate in the interactive process." (quotation and alteration omitted)). As the EEOC regulations explain, it is the interactive process itself that may ultimately determine whether any reasonable accommodations can overcome the limitations caused by a disability:

> This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

29 C.F.R. § 1630.2(o)(3). Moreover, a reasonable accommodation is one "which presently, or in the near future, enable[s] the employee to perform the essential functions of his job." *Roberts v. Progressive Indep., Inc.*, 183 F.3d 1215, 1220 (10th Cir. 1999) (quotation and emphasis omitted). Thus, a premature request is not unreasonable just because it is early. And contrary to Denver's argument, a reasonable jury could conclude this request was sufficient even though Officer Nguyen cannot identify which Denver employee he asked. A reasonable jury could conclude that a trainee asking one of Denver's employees—even an unidentified one—was sufficient under the ADA, which requires that the employee inform the defendant of his disability and need for accommodation. *See C.R. England*, 644 F.3d at 1049.

Second, a reasonable jury could conclude Officer Nguyen adequately requested accommodation again when Dr. Feehs recommended that he try new hearing aids. While Denver argues that this request was "too little, too late," the Tenth Circuit case it cites for that proposition did not address the circumstances

here. In *Dewitt v. Southwestern Bell*, 845 F.3d 1299, 1316–17 (10th Cir. 2017), the court held than an employer was not required to excuse an employee's past *misconduct*, even if caused by a disability. The employee in *Dewitt* intentionally hung up on customers, a violation of the workplace rules, while she was on a "last-chance" agreement. *Id.* Similarly, in *Davila v. Qwest Corp.*, 113 Fed. App'x 849, 854 (10th Cir. 2004) (unpublished), the Tenth Circuit held that "excusing workplace misconduct to provide a fresh start/second chance to an employee whose disability could be offered as an after-the-fact excuse is not a required accommodation under the ADA." The plaintiff in *Davila* wanted his employer to excuse past violent outbursts, which were rooted in his bipolar disability. *Id.*

By contrast, Denver points to nothing in the record showing Officer Nguyen engaged in any type of misconduct before he asked to try better hearing aids. Rather, Officer Nguyen argues he should have been able to at least complete his remedial training plan with the aid of better hearing aids and the FreeLinc device. He points out that at least 12 other trainees who had performance problems similar to his were allowed to complete their remedial training and go on to become solo Denver police officers (*See generally* ECF Nos. 51-1 through 51-12.) One officer had "difficulty completing routine forms," demonstrated "unacceptable performance in the area of officer safety," had "problems with orientation and response times to calls," and "displayed a weakness when it came to listening to radio traffic especially if she was doing something else." (End of Phase Report, ECF No. 52-1.) Yet she still went on to become a solo Denver police officer. Another officer was

"very slow to complete his reports," and "sometimes ignored or did not hear the dispatcher calling for cars on high priority calls," yet he finished his remedial training and went on to become a solo Denver police officer. (End of Phase Report, ECF No. 52-2.) He was allowed to continue even though, at the *end* of his remedial training, his training officer concluded he showed "little dedication to the principles of being a police officer." (*Id.* at 12, 13.) Yet another officer had problems with orientation, spent an "exorbitant" amount of time writing reports, and still omitted important information like the "who, what, where, why when and how" in his reports, but still was placed in a solo assignment. (End of Phase Report, ECF No. 52-2.) In light of this evidence, Denver's argument that Officer Nguyen wanted it to excuse his past performance falls flat. Officer Nguyen does not ask exceptional treatment because of his disability; he asks for equal treatment despite it. Thus, Dr. Feehs's recommendations did not come too late, and they made it "clear that the employee wants assistance for his or her disability" and were therefore sufficient under the ADA. *C.R. England*, 644 F.3d at 1049 (emphasis omitted).

Moreover, Denver's initiation of the formal interactive process is evidence that Officer Nguyen made an adequate request. The point of a request for accommodation is to provide the employer notice of an employee's disability and need for accomodation. *See Woodman*, 132 F.3d at 1345. There is ample evidence that Denver knew Officer Nguyen had a disability and needed accommodation. At least in theory, that is why Denver ultimately initiated its formal interactive process and told Officer Nguyen that "the purpose of the [interactive process] is to

explore whether you are able to perform the essential functions; whether you are a qualified individual with a disability within the definitions of the Americans with Disabilities Act of 1980 (ADA), as amended; and, if so, whether any reasonable accommodations are available help you perform the essential functions of your position." (April 22, 2014 Letter to Officer Nguyen, ECF No. 37-23). It would be an odd and unjust regime indeed if an employer like Denver could initiate the formal interactive process and then defend any defects in that process simply because it, rather than the employee, initiated the process.

Accordingly, there is sufficient evidence in the record—including Denver's conduct when it started the formal interactive process—from which a reasonable jury could conclude that Officer Nguyen adequately requested accommodation.

### b. Denver's Duty to Accommodate

Denver also argues that since Officer Nguyen testified in deposition that he believed he could perform the job of a DPD officer without additional accommodation (Nguyen Dep. at 272:19–273:16, ECF No. 37-1), it had no duty to accommodate him. In support of its argument, Denver cites *Koessel v. Sublette County Sheriff's Dep't*, 717 F.3d 736, 745 (10th Cir. 2013), where the Tenth Circuit held that an employer was not required to "anticipate the employee's needs and affirmatively offer accommodation." Unlike here, the employee in *Koessel* never requested accommodation because he believed he was not disabled. *Id.* at 744–45. As I described above, a reasonable jury could determine that Officer Nguyen repeatedly requested accommodation. That Officer Nguyen may have subjectively

believed he could perform the job of a DPD officer with those accommodations does not relieve Denver of its obligations under the ADA.

### c. Proposed Accommodations

I now turn to whether Officer Nguyen's proposed accommodations—using the FreeLinc device and time to try stronger hearing aids—are reasonable. "Whether an accommodation is reasonable under the ADA is a mixed question of law and fact." *Mason*, 357 F.3d at 1122. Courts use a burden-shifting framework to decide this issue. *White v. York Int'l Corp.*, 45 F.3d 357, 361 (10th Cir. 1995).

First, the employee "need only show that an 'accommodation' seems reasonable on its face, i.e., ordinarily or in the run of cases." *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 401 (2002). A proposed accommodation is not reasonable on its face if it would not enable the employee to perform the essential function at issue. *See* 29 C.F.R. § 1630.2(o)(1)(ii) (defining "reasonable accommodations" to include those accommodations "that enable an individual with a disability who is qualified to perform the essential functions of that position"); *Hennagir*, 587 F.3d at 1264–65 (deeming proposed accommodations unreasonable because they would not enable the plaintiff to perform the essential functions of a position).

Second, if the employee presents a facially reasonable accommodation, "[t]he burden of production then shifts to the employer to present evidence of its inability to accommodate." *Mason*, 357 F.3d at 1122. The employer "must show special (typically case-specific) circumstances that demonstrate undue hardship in the particular circumstances." *U.S. Airways*, 535 U.S. at 402.

Third, "[i]f the employer presents such evidence, the employee has the burden of coming forward with evidence concerning [his] individual capabilities and suggestions for possible accommodations to rebut the employer's evidence." *Mason*, 357 F.3d at 1122. "As with discrimination cases generally, the plaintiff at all times bears the ultimate burden of persuading the trier of fact that he has been the victim of illegal discrimination based on his disability." *White*, 45 F.3d at 361.

I agree that Officer Nguyen's requests for time to obtain new hearing aids and to use the FreeLinc device are reasonable on their face. Viewing the evidence in the light most favorable to Officer Nguyen, these accommodations would have allowed him to perform the job of a DPD officer. There is evidence in the record that he has "close to normal hearing" with the new hearing aids. (Huerta Dep. at 91:3–11, ECF No. 51-3.) He can hear "very soft tones" while the speaker is looking the other direction. (Montgomery Report at 10, ECF No. 51-2.) There is evidence that the FreeLinc makes a dramatic difference in his ability to hear the radio. (*Id.*) His supervisors at Lakeside say that with his current accommodations, he's a "great" officer and has no issues with hearing the radio. (Hughes Dec. ¶ 8, ECF No. 51-20); (Harris Dec. ¶ 8, ECF No. 51-27.) While Denver disputes how effective these accommodations would be, that is a factual dispute for the jury. There is at least a triable issue of fact as to whether Officer Nguyen would have been able to perform the essential duties of a DPD had he been afforded the chance to try his new hearing aids and a FreeLinc device.

In addition, I reject Denver's argument that the hearing aids were not a reasonable accommodation because hearing aids are personal devices that employers need not provide. Mot. Summary J. at 22-23 (ECF No. 37). This argument is flawed because Officer Nguyen wanted the chance to *try* the new hearing aids—he didn't ask Denver to actually provide them. In fact, Denver's own records reflect that Officer Nguyen had reported that his insurance would cover the new aids. (April 2014 Email String at 3, ECF No. 51-12) ("James said his insurance will cover it.")

Denver presents no evidence suggesting it couldn't accommodate Officer Nguyen's requests, but it does argue that giving him a trial period with the new hearing aids could have endangered the public. The problem with this argument is twofold. First, Denver had already placed Officer Nguyen in remedial training, which means he would have been with another DPD officer while he tried the new hearing aids. Second, if Denver was concerned about safety, it could have devised ways to test his hearing in a controlled environment before allowing him to train in the field. Accordingly, a reasonable jury could conclude that Denver failed to reasonably accommodate Officer Nguyen. *See Mason*, 357 F.3d at 1122.

My analysis does not end here, however, because Denver argues that even if Officer Nguyen was not reasonably accommodated, it was not Denver's fault; instead, Denver argues that Officer Nguyen caused a breakdown in the interactive process by failing to provide relevant information.

### d. Flaws in the Interactive Process

The parties blame any problems with the interactive process on each other. Denver argues Officer Nguyen failed to adequately participate in the interactive process, and Officer Nguyen argues Denver's participation was little more than a sham. The interactive process, as the name implies, requires both employee and employer to take some initiative. *Templeton v. Neodata Servs., Inc.*, 162 F.3d 617, 619 (10th Cir. 1998) ("The federal regulations implementing the ADA envision an interactive process that requires participation by both parties." (quotation omitted)).

It is difficult to avoid the conclusion that, based on the record before this Court, the interactive process didn't work as it was intended. After all, Officer Nguyen is now a successful officer at Lakeside; both the assistant chief of police and his sergeant sing his praises. (Hughes Dec. ¶ 8, ECF No. 51-20; Harris Dec. ¶ 8, ECF No. 51-27). Yet while training at Denver, he never got a chance to try stronger hearing aids, nor did he use the FreeLinc device that worked so well at Lakeside.

That doesn't mean Denver violated the ADA—the interactive process can fail based on the conduct of either an employee or an employer. On the record before this Court, I cannot conclusively say the process failed because of Officer Nguyen. Summary judgment is thus unwarranted. *See Valdez v. McGill*, 462 Fed App'x 814, 819 n.5 (10th Cir. 2012) (unpublished) (explaining that failure to engage in the interactive process "will often make it difficult to resolve a case for the employer on summary judgment" because it is "not likely that an employer will be able to establish on summary judgment the absence of a disputed fact as to the existence of a reasonable accommodation" (citation and quotations omitted)); *see also Rehling v.*

*City of Chicago*, 207 F.3d 1009, 1016 (7th Cir. 2000) ("[T]his Court found potential liability based on an employer's failure to engage in an interactive process in circumstances where the plaintiff alleged that the result of that breakdown was the employer's failure to provide a reasonable accommodation.").

Moreover, the evidence suggesting Denver failed to sufficiently engage the interactive process is fairly compelling. First and foremost, despite telling Officer Nguyen it was beginning the formal interactive process, there is evidence in the record that Denver had already decided to fire him. Director O'Malley testified she probably approved his termination in February 2014, and that once she approves someone's termination, "that means they're terminated." (O'Malley Dep. at 68:5–6, ECF No. 51-15.) When Denver's ADA coordinator recommended that Denver reassess Officer Nguyen after he could try new, stronger hearing aids (that he had already ordered), Deputy Chief Klee questioned whether Denver should "make it clear to Officer Nguyen that we are not telling him to move forward with those expensive hearing aids." (April 2014 Email String at 1, ECF No. 51-12.) He also wrote that "[i]t sounds like [Ms. Springer] indicated to him that he could return to work if he got them [and] that concerns me." *Id.* Two DPD employees explained that they did not investigate Officer Nguyen's discrimination allegations because they had already decided, by the time the interactive process started, that he could not return to work. (Klee Dep. at 30:5–16, 31:13–16; Quinones Dep. at 92:23–93:2.) Based on this record, a reasonable jury could conclude that Denver did not

adequately participate in the interactive process and therefore failed to accommodate Officer Nguyen.

Second, Denver terminated Officer Nguyen's remedial training early. Denver told Officer Nguyen that the phase would last at least two weeks and then two weeks more if he hadn't improved enough. But it ended the remedial plan after just one week. (2/17/2014 Inter-Department Correspondence, ECF No. 37-17.) While the parties dispute whether Officer Nguyen improved before Denver terminated him, it doesn't really matter. If he improved, then Denver terminated him despite his improvement. If he didn't improve, then Denver terminated him despite telling him he would get more training if he didn't progress. (*See* Supervisor's Situation Report, ECF No. 51-4) (report explaining that Officer Nguyen was told that "his failure to achieve an acceptable performance level in remedial training in two weeks will result in an additional two weeks of training geared toward correcting his below standard performance areas.") Thus, viewing the facts in the light most favorable to Officer Nguyen, a reasonable jury could conclude that Denver terminated the training early because of his hearing and without an adequate opportunity to develop appropriate accommodations.

Third, a reasonable jury may conclude that Sergeant Heimbigner's memorandum about terminating Officer Nguyen, which wrongly stated that "[a] second opinion from an audiologist confirmed that Officer Nguyen's hearing aids were the best available for his condition and there were no other aids that could improve his hearing," is evidence that Denver is at fault for prematurely ending the

interactive process.  (2/17/2014 Inter-Department Correspondence at 11, ECF No. 37-17.)

Fourth, there is evidence that Denver did not follow its own policy in initiating the formal interactive process.  According to Ms. Springer, Denver's ADA Coordinator, Denver should have initiated the interactive process within twenty days of when "there was [sic] substantiating indications to indicate that [Officer Nguyen] would need an accommodation."  (Springer Dep. at 82:24–23, 83:10–16, ECF No. 51-16.)  It was clear from early on in the training that Officer Nguyen needed accommodation, yet Denver waited until Officer Nguyen was in remedial training to initiate the formal interactive process.  While Denver argues it engaged in the informal process throughout Officer Nguyen's training, a reasonable jury could disagree and also find it persuasive that Denver did not initiate the formal interactive process until after it had recommended his termination, and then only "because Suzanne Iverson in HR said that we needed to."  (Klee Dep. at 40:18–24, 45:3–25, ECF No. 51-14.)

Denver argues that Officer Nguyen failed to provide necessary medical information and thus caused any breakdown in the interactive process.  If an employee fails to provide information necessary to the interactive process, an employer cannot be at fault for failing to provide reasonable accommodation.  *See Templeton*, 162 F.3d at 619 ("[T]he employee's failure to provide medical information necessary to the interactive process precludes her from claiming that the employer violated the ADA by failing to provide reasonable accommodation.").

Denver points out that it was Officer Nguyen who brought in the initial wired hearing device to use with the radio—which didn't work as well as the FreeLinc device. Similarly, Denver points out that Officer Nguyen never informed anyone that in January 2014, the audiologist student extern told him a different hearing aid would provide more benefit. But neither of these potential failings conclusively overcome the fact that Denver eventually had all the information it needed, and it had that information *before* it ended the formal interactive process.

Moreover, when courts hold that an employee should bear the responsibility for a breakdown in the interactive process, it's because the employee either refused or failed to provide relevant medical information. *E.g., Templeton*, 162 F.3d at 619 (employee refused to authorize doctor to release information employer requested about her ability to work); *McFarland v. City & County of Denver*, No. 15-CV-01258-KMT, 2017 WL 3872639, at *7 (D. Colo. Sept. 5, 2017) (employee never told employer she needed a different assessment procedure for an employment test). Officer Nguyen never refused to provide any medical information Denver requested. And Denver knew that Officer Nguyen's doctor recommended a new wireless device and time to try new hearing aids, but it refused to provide those accommodations.

To avoid this problem, Denver once again emphasizes Dr. Feeh's questionnaire response, arguing that by failing to challenge or correct Dr. Feehs's mistaken questionnaire response, Officer Nguyen caused a breakdown in the interactive process. Denver essentially argues that even though Officer Nguyen is disabled, it was entitled as a matter of law to rely on Dr. Feehs's response that—

contrary to all other evidence in the record—Officer Nguyen was *not* substantially limited in any major life activity and could work with no restrictions.

There are two substantial problems with this argument. The first, and most obvious, is that Denver knew from the time it hired Officer Nguyen that his hearing was impaired. (Pre-Employment Medical Agreement and Hearing Evaluation, at 1-2, ECF No. 52-21.) As part of pre-employment screening, Denver learned that Officer Nguyen had "stable moderate conductive hearing." (*Id.* at 2.) Denver also knew that his hearing loss was interfering with his work as a police officer; Officer Nguyen's training records are replete with references to problems caused by his hearing disability. (*E.g.*, End of Phase One Report at 5, ECF No. 37-8.; End of Phase Three Report at 4, ECF No. 37-10; End of Phase Four Report at 5, ECF No. 37-11; 12/09/2013 Daily Observation Report at 1, ECF No. 37-12.) The remedial training plan referenced Officer Nguyen's "hearing disability." (2/5/2014 Remedial Training Plan at 2, ECF No. 37-15.) When Sergeant Heimbigner recommended Officer Nguyen's termination, he described the impact of "Officer Nguyen's hearing disability" on his performance. (2/17/2014 Inter-Department Correspondence at 11, ECF No. 37-17.)

The second problem with this argument is that Dr. Feehs recommended accommodations for Officer Nguyen's hearing loss in that same questionnaire, yet Denver ignored those recommendations. A jury may well conclude that because Denver knew Officer Nguyen was disabled and knew his doctor recommended he try new hearing aids and use a Bluetooth device with the radio, Denver was not

justified in relying on Dr. Feehs's responses, irrespective of whether Officer Nguyen challenged them.

While I agree with Denver that the failure to adequately participate in the interactive process is not, standing alone, a basis for liability under the ADA, it does suggest that the employer may have been unresponsive to the plaintiff's requests for accommodation, in violation of the ADA. *See, e.g.*, *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 807-08 (7th Cir. 2005) (denying summary judgment where plaintiff "made several requests for accommodations which Sears simply denied" and the Sears "did not actively engage in the interactive process by suggesting possible accommodations or requesting information that would help it do so"); *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 315 (3d Cir. 1999) (denying summary judgment where employer knew of employee's disability and need for accommodation but employer "offered no accommodations or assistance in finding them, made [plaintiff's] job more difficult, and simply sat back and continued to document her failures").

There is certainly evidence that Officer Nguyen did not act as promptly as he could have in obtaining new hearing aids, but there is also evidence that Denver did not adequately participate in the interactive process. Accordingly, a reasonable jury could conclude that Denver bears the blame for the breakdown in the interactive process and violated the ADA by failing to accommodate Officer Nguyen.

B.    **Wrongful Termination Claim**

In addition to his failure-to-accommodate claim, Officer Nguyen brings a wrongful termination claim. Like a failure-to-accommodate claim, a wrongful

termination claim requires a plaintiff to prove (1) that he was disabled and (2) that he was he was qualified, with or without reasonable accommodation, to perform the essential functions of his job, and (3) that he was discriminated against because of his disability. *See Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 912 n.4 (10th Cir. 2004). However, in a failure-to-accommodate claim, the failure to accommodate is itself proof of discrimination. *Punt*, 862 F.3d at 1048.

By contrast, in a wrongful termination claim, the plaintiff must provide evidence of discriminatory intent—that he was fired because of his disability. *Punt*, 862 F.3d at 1048; *Bartee*, 374 F.3d at 912 n.4. A plaintiff can demonstrate this discriminatory intent either through direct evidence—that is, "evidence, which if believed, proves the existence of a fact in issue without inference or presumption"— or through circumstantial evidence, which is evaluated under the *McDonnell Douglas* burden-shifting framework." *Punt*, 862 F.3d at 1048 (quotation omitted). Both parties here agree that the *McDonnell Douglas* framework is inapplicable because Denver admits that Officer Nguyen's disability played a prominent part in its decision to terminate him. *See Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 n.3 (10th Cir. 1997) ("If the employer admits that the disability played a prominent part in the decision, or the plaintiff has other direct evidence of discrimination based on disability, the burden-shifting framework may be unnecessary and inappropriate.").

When I evaluated his failure-to-accommodate claim, I concluded Officer Nguyen came forth with sufficient evidence, for the purposes of defeating summary

judgment, showing he was disabled and was qualified, with reasonable accommodation, to perform the essential functions of a DPD officer. *See generally* sections III(A)(1) & (2). Thus, the resolution of Officer Nguyen's wrongful termination claim turns on the third element of a prima facie wrongful termination case—whether he was discriminated against because of his disability. To meet this third element, Officer Nguyen must present "some affirmative evidence that disability was a determining factor in the employer's decision." *Morgan*, 108 F.3d at 1323. He "must present evidence that, if the trier of fact finds it credible, and the employer remains silent, she would be entitled to judgment as a matter of law." *Id*. at 1324 (citation omitted).

Denver argues that Officer Nguyen was not qualified to be a DPD officer even with accommodation, which is why he was fired. But because I already concluded that there is at least a triable issue of fact as to whether he was qualified with accommodation, Denver's argument on this point must fail as well. Officer Nguyen has presented "affirmative evidence that disability was a determining factor" in Denver's decision to terminate him, including Sergeant Heimbigner's February 17, 2014 memo, which Denver admits formed the basis of his termination. While the memo described some performance issues unrelated to his hearing, it also concluded Officer Nguyen's hearing was a serious problem:

> The inability to hear effectively is a contributing factor to the safety of Officer Nguyen, other police officers and the general public. Officer Nguyen's hearing disability has identified a variety of situations that pose risk in many different forms. . . . Placing Officer Nguyen in a solo capacity as a patrol officer would pose an unacceptable and unnecessary risk to the Denver Police Department and the citizens of

> Denver.  There are limited compensating behaviors that can be
> effectively utilized because without acceptable hearing most forms of
> communicating frequently used by police officers will always suffer. . . .
> Continuing Officer Nguyen in the field training and evaluation
> program would not result in a change in performance since the
> problem cannot be corrected medically or through training.

(2/17/2014 Inter-Department Correspondence, ECF No. 37-17.)  The memo indicates

that Denver may have believed Officer Nguyen's hearing "cannot be corrected," and

thus was an intractable problem warranting Officer Nguyen's termination.  (*See*

2/17/2014 Inter-Department Correspondence, ECF No. 37-17.)  Summary judgment

is therefore unwarranted.

## IV.  CONCLUSION

Because I conclude there are genuine disputes as to material facts, I DENY

Denver's motion for summary judgment.  (ECF No. 37.)


Dated: December  21, 2017 in Denver, Colorado.


                                        BY THE COURT:


                                         s/Lewis T. Babcock
                                        LEWIS T.  BABCOCK